George M. Fanelli, J.
This is an application presented to the court pursuant to section 52 of the Membership Corporations Law by seven separate duly incorporated domestic membership corporations located throughout the County of Westchester, each dealing with the girl scout movement, for an order approving an agreement for consolidation heretofore executed by the applicants on June 1, 1965; and authorizing the filing of a new certificate of incorporation to be known as the Sackerah Path Girl Scout Council, Inc.
It appears from the papers that out of 570 eligible voters in the various seven councils, 476 voted in favor and 25 voted against the agreement to consolidate. While notice of the present application has been given to all 25 nonconsenting members, as well as to one other interested person, only 7 persons (all from the New Rochelle Girl Scout Council, Inc.) have appeared as respondents in opposition to the relief sought, and only one of the respondents is an original nonconsenting member.
The principal grounds for the objection to the court’s approval of the proposed consolidation are as follows: (1) that the present application is premature in that, contrary to the provisions of subdivision (a) of paragraph 14 of the said consolidation agreement, the various seven councils have not delivered and submitted to each other, as a condition precedent, “their respective audited financial statements” and “statements of contingent liabilities and commitments which the officers of the respective corporations believe may be required to be assumed by the consolidated corporations (2) that the proposed certificate of consolidation does not contain a statement of all property and the manner in which it is held, and all liabilities and of the amount and sources of the annual income of each such corporation; (3) that the respective boards *885 of directors have not had a chance to consider the consolidation in the light of such information; (4) that the requisite two thirds of the members entitled to vote of some of the councils in approving the proposed consolidation are lacking; and (5) that article 3 of the proposed by-laws of the consolidated corporation, dealing with the election of delegates, does not provide for “ proportional representation ” or a more democratic representation “ of the various Councils or communities that will be participating in the consolidated group ”, with the result that the New Rochelle Girl Scout Council with a total eligible membership of almost one half of the entire total eligible voting membership will have the same number of 10 votes as the other remaining six councils.
The Membership Corporations Law of the State of New York sets forth certain procedure for consolidation of domestic membership corporations. Section 50 provides that ‘ ‘ Any two or more membership corporations incorporated under or by general or special laws, for kindred purposes, may enter into an agreement for the consolidation of such corporations and such corporations may be consolidated so as to form a single corporation, which may be either a new corporation or one of the constituent corporations ”, by the filing of a certificate of consolidation containing certain pertinent information and subscribed by every member of each constituent corporation entitled to vote thereon or by certain officers of each constituent corporation, as the case may be, accompanied by an affidavit that they have been authorized to execute and file such certificate by the votes, cast in person or by proxy, of two thirds of the members of such corporation entitled to vote thereon, at a meeting held upon notice as prescribed in section 43 of the Membership Corporations Law, and the date of such meeting.
Section 52 of the Membership Corporations Law provides for application to the Supreme Court for approval of the certificate of consolidation. Subdivision 1 thereof provides that such ‘ ‘ application shall be made by all the constituent corporations jointly and shall set forth by affidavit (a) the agreement for consolidation, (b) the approval of the agreement by the members of each constituent corporation, given in the manner prescribed in this section, (e) the objects and purpose of each such corporation to be promoted by the consolidation, (d) a statement of all property, and the manner in which it is held, and of all liabilities and of the amount and sources of the annual income of each corporation, (e) whether any votes against adoption of the resolution approving the agreement for con *886 solidation were cast at the meeting at which the resolution was adopted by each constituent corporation, and (f) facts showing that the consolidation is authorized by the laws of the jurisdiction under which each of the constituent corporations is incorporated ”.
The statute then goes on to say in subdivision 2 that “If it shall appear, to the satisfaction of the court, that the provisions of this section have been complied with, and that the interests of the constituent corporations and the public interest will not be adversely affected by the consolidation, it shall approve the consolidation upon such terms and conditions as it may prescribe ”, and, further, that “ If the court shall find that the interests of non-consenting members are or may be substantially prejudiced by the proposed consolidation, the court may disapprove the agreement or may direct a modification thereof. In the event of a modification, if the court shall find that the interests of any members may be substantially prejudiced by the proposed consolidation as modified, the court shall direct that the modified agreement be submitted to vote of the members of the constituent corporations, or if the court shall find that there is no such substantial prejudice, it shall approve the agreement as so modified without further approval of such members ”.
The court has examined the agreement for the consolidation, dated June 1, 1965, and finds that it duly complies with the requisite requirements of section 50. All the constituent corporations are domestic membership corporations and were originally incorporated for “kindred purposes ”. The agreement is subscribed and acknowledged by the president of each of the seven constituent corporate councils, and the proposed certificate of consolidation, dated January 10, 1966, is also (pursuant to the provisions of § 50, subd. 8, par. b) duly subscribed and acknowledged by the president and secretary of each council, and has annexed thereto an affidavit in each instance stating that the president and secretary have been authorized to execute and file such certificate by the voters, cast in person or by proxy, of two thirds of the members of such corporation entitled to vote thereon, at a meeting held upon notice as prescribed in section 43 of the Membership Corporations Law and the date of such meeting. Respondents have made no factual showing that either the agreement for the consolidation or the certificate of consolidation itself is in any way defective. It is undisputed that the presidents of the seven constituent councils were duly authorized to execute and acknowledge the June 1, 1965 agreement.
*887 Respondents’ concern relative to the alleged nonexchange of the audited financial statements and statements of contingent liabilities and commitments of the various councils is insufficient to warrant a denial of the present application. Contrary to the position taken by respondents, such agreement on the part of the constituent councils (par. 14, subds. [a] and [b]) was not made a condition precedent to the validity of the consolidation, nor may this court rewrite or change the agreement of the parties to such agreement. Moreover, there is sufficient indication in the papers that responsible persons and officers of the New Rochelle Council did in fact familiarize themselves with the financial statements of the other constituent councils. Whether such financial statements and statements of contingent liabilities, the contents and nature of which respondents have since the commencement of this proceeding been fully aware, were or were not “ audited” is of no real significance since no claim has been made by the respondents that such statements are in fact erroneous or do not accurately reflect the true financial condition of the constituent council, as the case may be; that some kind of fraud has been practiced upon them; nor does the agreement or the statute (nor may this court) require that the proposed consolidation be conditional upon the form, contents, acceptability or satisfaction of such statements. The purpose of the agreement was not a financial one but, rather, according to the terms of paragraph 13, one “ to avoid duplication and to best serve and carry out and advance and more fully and efficiently accomplish their common purposes and objectives ”. Insofar as the proposed by-laws of the consolidated corporation are concerned and the argument that article 3 thereof does not afford the larger councils a larger or so-called ‘ proportional representation ”, the court notes that there is nothing in the agreement to consolidate nor in the Membership Corporations Law which requires any such form of numerical representation. Members of membership corporations have no vested rights in particular methods of voting, and it is not within the province of the court on an application such as this to pass upon any such internal matter. The extent and manner of voting in the newly consolidated corporation is something which all the members of the former constituent councils, as a whole, will have to pass upon when they accept or reject the proposed by-laws (Membership Corporations Law, § 20) and such matters of voting are not suitable for inclusion in the certificate of consolidation. There is nothing undemocratic about such form of voting.
*888 The statute (Membership Corporations Law, § 52) is specific as to the function of the court on an approval application such as this. Subdivision 1 thereof sets forth the material which must be submitted to the court as a condition precedent. The subdivision specifies in letter items (a) to (f) the total and exclusive matters that must be shown.
Thus, the pivotal questions upon which this decision hinges are: (1) have the provisions of subdivision 1 of section 52 been complied with; (2) will the interests of the constituent corporations and the public interests be adversely affected by the consolidation; and (3) are or may the interests of nonconsenting members be substantially prejudiced by the proposed consolidation. The court finds that the application is properly and duly made by all the constituent corporations jointly and that such application does set forth by affidavit (a) the agreement for consolidation, and (b) the approval of the agreement by the members of each constituent corporation, given in the manner prescribed in this section. Such “manner” is prescribed in section 50 (subd. 8, par. b) (cf. § 52, subd. 4). Here, the proposed consolidation certificate has been duly executed and acknowledged by the president and secretary of each of the seven constituent corporate councils. They have also executed affidavits wherein they state under oath that they have been authorized to execute and file such certificate by the vote, cast in person or proxy, of two thirds of the members of such corporation entitled to vote thereon, and such fact has been repeated under oath by the seven presidents in the petition now before the court (see par. 10 of petition verified Jan. 10, 1966). Respondents, in conclusory charges, question such requisite two-thirds vote in each instance, particularly with respect to the Larchmont and White Plains Girl Scout councils. Interestingly, it is the respondents (members of the New Rochelle Girl Scout Council) who challenge the votes in said two other councils rather than the members of these other two councils themselves. The court is satisfied from the affidavit of the president of the White Plains council with respect to the delegate-type of voting procedure employed in said council (rather than membership voting) where, pursuant to their by-laws (Art. II, § 2) 24 persons may exercise the vote of the membership, although she further states under oath (and uncontradicted) that the entire membership of 370 persons were informed of the pending consolidation so that the 24 voting delegates (who were elected by the membership and who have sole power to vote on any policy affecting the White Plains council) were fully aware of the wishes of the other members *889 of the council before casting their votes. The vote in the White Plains council was unanimously in favor of the consolidation. Furthermore, in the case of the Larchmont council, the papers indicate that the vote there was 23 to 1 in favor of the consolidation. According to its constitution (Art. Ill), the membership of the Larchmont council “ shall consist of not less than 15 nor more than 30 members ”. Accordingly, in the light of the aforementioned, the court finds that the voting requirements of the two respective councils have been met and that the statutory requirement calling for two thirds of the members of these two constituent corporations “ entitled to vote ” has been fulfilled (see, also, Membership Corporations Law, § 45).
There appears to be no quarrel concerning items (c), (e) and (f) of subdivision 1 of section 52. Thus, the remaining item which respondents challenge is item (d). The court finds that the material required under this latter item do constitute a condition precedent to the court’s approval of the certificate of consolidation. This item calls for: “a statement of all property, and the manner in which it is held, and of all liabilities and of the amount and sources of the annual income of each corporation ’ ’. The court has examined all the papers now before it and is of the opinion that such information has been supplied. The statute makes no mention of any ‘ ‘ audited financial statements ”, but merely requires such information in affidavit form. This has been done by the incorporation by reference of the various exhibits to the moving petition, which the court finds are adequate and sufficient compliance with the statutory requirement of item (d). The property and the manner in which it is held, and of all liabilities are disclosed, as well as the amount and sources of the annual income of each such corporation.
In sum, then, the court finds: (1) that petitioners have complied with all the provisions set forth in subdivision 1 of section 52; (2) that upon all the papers submitted the interests of the constituent corporations and the public interest will not be adversely affected by the consolidation; and (3) that the interests of the nonconsenting member or members are not or may not be substantially prejudiced by the proposed consolidation. The overwhelming vote of the respective seven councils is in favor of a consolidation herein. In the New Rochelle Council the vote was 213 to 20 in favor of consolidation.
The purposes and objects of such consolidation are “ to offer all girls, seven through seventeen, residing within its jurisdiction an opportunity to participate in the Girl Scout program, in accordance with the purpose of the Girl Scout movement in *890 the United States of America, which is to inspire girls with the highest ideals of character, conduct, patriotism, and service that they may become happy and resourceful citizens” (Consolidation Certificate, art. 7, subd. B, par. [a], dated Jan. 10, 1966).
The court takes notice of the fact that all the parties involved in this proceeding are dedicated to girl scouting and to its precepts, regardless of race, creed or color. They receive no salary and are people of dedication, honesty and sincerity of purpose who have given much of their time, energy and resources in an over-all effort to foster the principles of the girl scout movement. The court trusts that all the interested parties will continue their enthusiasm and dedication so as to inspire girls with the highest ideals of character, conduct, patriotism and service that they may become happy and resourceful citizens.
The application is granted, and an order may be settled on notice providing for the approval of the agreement of consolidation and authorizing the filing of the new certificate of incorporation to be known as the Sackerah Path Girl Scout Council, Inc,